Filed 4/4/14  P. v. Keigh CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SPENCER AARON KEIGH,<br><br>    Defendant and Appellant. | G048477<br><br>(Super. Ct. No. 10HF1977)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Christopher Evans, Commissioner.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

## INTRODUCTION

Spencer Aaron Keigh appeals from the order revoking and reinstating his probation with conditions. He challenges the condition that he submit to continuous monitoring by a global positioning system (GPS). We conclude the trial court did not abuse its discretion by imposing that condition and therefore affirm.

## FACTS

In November 2011, the Orange County District Attorney filed an amended information charging Keigh with one count of unlawful sexual intercourse in violation of Penal Code section 261.5, subdivision (c). The amended information alleged that Keigh had engaged in an act of sexual intercourse with a female who was not his spouse and who was a minor more than three years younger than he. Keigh pleaded guilty to the charged offense.

The trial court placed Keigh on three years of formal probation on the condition he first serve 270 days in jail (with two days of custody credit). Terms of probation provided that Keigh use no unauthorized drugs, narcotics, or controlled substances, and that he submit to drug or narcotics testing as directed by his probation officer or a police officer.

In April 2013, Keigh was charged with a probation violation. The petition for arraignment on probation violation (the arraignment petition) alleged: "[Keigh] submitted a urine sample which tested positive for marijuana use on February 25, 2013 and April 8, 2013. He submitted a saliva sample which tested positive for marijuana use on March 25, 2013. When confronted on his apparent drug use [Keigh] denied using marijuana, instead claiming a friend blew marijuana smoke in his face as a joke." The arraignment petition recommended as an additional probation condition that Keigh submit to continuous electronic monitoring by a GPS.

2

At a probation revocation hearing, Keigh admitted the probation violation. The parties stipulated the trial court could use all of the information in the arraignment petition in "fashioning its sentence." The trial court ordered probation revoked and reinstated. The court ordered Keigh to spend 75 days in jail and, as an additional probation condition, to "submit to continuous electronic monitoring positioning system or other device as directed by your probation officer." Keigh appealed from the probation revocation order "to challenge GPS condition of probation."

## DISCUSSION

1. *Relevant Law Regarding Probation Conditions*

Courts have broad discretion to impose probation conditions "to foster rehabilitation and to protect public safety." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) We review conditions of probation under the abuse of discretion standard. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

"Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.]" (*People v. Olguin*, *supra*, 45 Cal.4th at p. 379.) This test is conjunctive; therefore, all three parts must be satisfied before a reviewing court will invalidate a probation term. (*Ibid.*) "As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Id.* at pp. 379-380.)

Penal Code section 1210.7, subdivision (a) authorizes probation departments to use continuous electronic monitoring to electronically monitor the whereabouts of probationers. The Legislature found that "continuous electronic monitoring has proven to be an effective risk management tool for supervising high-risk

persons on probation who are likely to reoffend where prevention and knowledge of their whereabouts is a high priority for maintaining public safety." (Pen. Code, § 1210.7, subd. (e).)

2. *The Trial Court Did Not Abuse Its Discretion.*

The condition that Keigh submit to GPS monitoring is reasonably related to preventing future criminality. The arraignment petition reported that Keigh had been convicted of violating Penal Code section 261.5, subdivision (c), and that "both [Keigh] and the victim smoked marijuana together prior to the sex act." Keigh's case had been assigned to the probation department's sex crimes unit and was being managed under the "Containment Model," which includes intensive supervision, specialized treatment, and polygraph examinations. "The goal is to provide proactive supervision and ongoing risk assessment, to allow for intervention during high-risk conduct prior to recidivism, thereby reducing victimization of the community."

According to the arraignment petition, Keigh had enrolled in sex-specific treatment but had made "minimal progress" in treatment. The therapist had contacted Keigh's probation officer with concerns about Keigh's behavior during treatment sessions. Keigh appeared to be under the influence during sessions, and frequently arrived late and left early. The therapist saw "high-risk behavior" in group therapy. During an initial polygraph examination, the polygrapher noted that Keigh appeared to be deceptive about his past sexual activity.

The arraignment petition stated: "Since being on probation, [Keigh] has admitted to being a sex addict. He has admitted to having more than 60 sexual partners. He has admitted to random 'hook-ups' with high[]school friends and older women in their late 40's he met on the internet. [Keigh] does not use age, maturity level, or length of acquaintance as factors in his choice of sexual partner."

The arraignment petition concluded that Keigh continued to engage in high-risk behavior. "[Keigh] admits to sleeping most of the day and staying up all night

4

playing video games. [Keigh] admits to 'hanging out' with his friend 'Matt', who uses marijuana. It is apparent that [Keigh] uses marijuana and plays video games at 'Matt's' house. Since he admittedly spends so much time there, and most video games have an online component, it is reasonable to conclude that [Keigh] accesses the internet at 'Matt's' house and avoids detection. The lack of pro-social activities like work, school, or volunteer work, and an admitted abundance of leisure time, with no way to verify his whereabouts, is another risk factor in his supervision."

Based on the parties' stipulation, the trial court considered all of the information in the arraignment petition. The court concluded: "[T]he link I am concerned with is the fact the court needs to supervise the defendant for his rehabilitation. [¶] I can't do that if the probation officer can't do it, and the probation officer can't do it when the defendant is in places where the probation officer has no way[,] without prescience[,] of knowing where the defendant is, it is impossible to supervise that man. [¶] The G.P.S. is the only way this court knows where the probation officer can have that information, based on the fact that the court is considering in this three-page report that you stipulated . . . is admissible . . . , it shows to me various locations involved, and there is no way to determine where the defendant is and unsupervisable without the use of G.P.S. [¶] In order to address the recidivism issue, the court feels [GPS monitoring] is appropriate."

The information presented in the arraignment petition supported the trial court's decision by showing that Keigh was at high risk of reoffending and had made little progress, if any, in rehabilitation. Keigh had been engaging in high-risk behavior by using marijuana at his friend Matt's house. Keigh had smoked marijuana with the victim before committing the sex-related crime for which he was convicted. Keigh had made numerous sexual liaisons and did not use age or maturity level in selecting sexual partners, despite having been convicted for having had sex with a minor more than three

5

years younger than he was.  The probation department could better protect the public by knowing whether Keigh was at a location where he might reoffend.

Keigh had made minimal progress in treatment, frequently arrived late to therapy sessions and left early, and while there appeared to be under the influence.  Keigh was being managed under the containment model, which included intensive supervision, and, as the trial court recognized, his high-risk behavior had made GPS monitoring necessary to achieve the required level of supervision.

Keigh was one of the "high-risk persons on probation" for whom GPS monitoring has proven to be an effective risk management tool.  (Pen. Code, § 1210.7, subd. (e).)  It was important for the probation department to know his whereabouts in order to foster rehabilitation and to protect the public.  The trial court did not abuse its discretion by imposing continuous monitoring by a GPS as a probation condition.

## DISPOSITION

The order revoking and reinstating probation is affirmed.

FYBEL, J.

WE CONCUR:

ARONSON, ACTING P. J.

IKOLA, J.

6